```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BARRY VALLEN,

                        Plaintiff,          MEMORANDUM & ORDER
                                            16-CV-2893(JS)(ARL)
        -against-

RESHAWN NEWSON and STEVE SYDZIAC,

                        Defendants.
----------------------------------------X
BARRY VALLEN,

                        Plaintiff,          MEMORANDUM & ORDER
                                            16-CV-2632(JS)(ARL)
        -against-

CAROL HALL,

                        Defendant.
----------------------------------------X
```
APPEARANCES
For Plaintiff:      Barry Vallen, pro se
                    0142991
                    Pilgram Psychiatric Center
                    998 Crooked Hill Road, Ward 401
                    West Brentwood, New York 11717

For Defendants:     Lori L. Pack, Esq.
                    New York State Attorney General Office
                    300 Motor Parkway, Suite 205
                    Hauppauge, New York 11788

SEYBERT, District Judge:

Before the Court is a motion from Defendants Steve Sydziac ("Sydziac"), Reshawn Newson ("Newson"), and Carol Hall ("Hall," and collectively, "Defendants") to dismiss the three complaints of pro se Plaintiff Barry Vallen ("Plaintiff" or

"Vallen"). Plaintiff is a patient at Pilgrim Psychiatric Center ("Pilgrim") and Defendants are employees of Pilgrim. For the following reasons, Defendants' motion (see 16-CV-2893, D.E. 20, and 16-CV-2632, D.E. 23) is GRANTED.

BACKGROUND

Vallen was civilly committed in 1985 after he killed his parents. He is now a patient at Pilgrim.[1] Here, Vallen filed three complaints against various staff at Pilgrim. By prior Orders, this Court consolidated Docket No. 16-CV-3693 into 16-CV-2893, leaving only Docket Nos. 16-CV-2893 and 16-CV-2632 open. (See 16-CV-2893 Order, D.E. 8, at 2; 16-CV-2893 Feb. 8, 2017 Elec. Order.) It also dismissed several defendants, leaving only Sydziac, Newson, and Hall. (See 16-CV-2893 Order at 3.) The remaining Defendants now move to dismiss the remaining actions.

The following allegations, which are presumed true for purposes of this order, are taken from the First Complaint, ("Complaint I"), against Defendants Sydziac (a nurse) and Newson (a mental therapy aide). (Compl. I, D.E. 1, 16-CV-2893.) On May 13, 2016, at approximately 8:00 p.m., Sydziac pushed Vallen and caused him to fall. At 8:15, Vallen went to call the Justice Center, an agency he states takes complaints of "patient abuse."

---

[1] A thorough review of Plaintiff's psychiatric history and commitment can be found in Vallen v. Connelly, No. 99-CV-9947, 2004 WL 555698 (S.D.N.Y. Mar. 19, 2004), aff'd, 185 F. App'x 22 (2d Cir. 2006).

2

Newson "started screaming at [him] to get off the phone" while standing within two feet of him. Vallen further alleges that Newson, who is over six feet tall, was "inraged" [sic] and "threatened [Vallen] with extreme violence." Newson warned Vallen not to use Newson's name or he would "kill [him] by smashing [his] head into the wall," and Vallen was "terrified." Vallen alleges that no other staff members "came to [his] aid." (Compl. I at 4, ¶ IV.A.) Vallen is "suffering severe trauma, fear, loss of sleep [and] no one is specifically treating [him] for trauma. In fact, [Newson] still works on the ward and [Sydziac] also." Vallen is "worried what will happen" "unless [he] stop[s] being humiliated and feeling powerless." (Compl. I at 4, ¶ IV.A.) Plaintiff filed the first complaint approximately two weeks later. As to relief, he seeks "money for psychological care until [he is] healed," specifically, "an award of 5,000,000 to compensate what may be a permanent trauma." (Compl. I at 5.)

In the Second Complaint, filed on May 19, 2016, Vallen complains of Pilgrim's mail system. (Compl. II, D.E. 1, 16-CV-2632.) He names Hall, "the treatment team leader for ward 401," as the only defendant. He claims that "mail lays around sitting for weeks before going out anyone can take it. Incoming mail is erratic and does not always arrive. Certified mail is often lost and unknown where it comes or goes." (Compl. II at 4, ¶ IV.) According to Vallen, he "lost a big case in court due to not

3

receiving certified mail." (Compl. II at 4, ¶ IV.A.) He seeks "a more efficient mail system" as relief. (Compl. II at 5.)

Plaintiff filed the Third Complaint, ("Complaint III"), in July 2016. (Compl. III, D.E. 1, 16-CV-3963.) It contains allegations of the same incident described in Complaint I. Vallen additionally notes that Sydziac pushed him when he stood up from his wheelchair by "grabb[ing his] arms and viciously thrust[ing him] back towards the ground." When Newson threatened him, Vallen believed he "was in one of his drunken rages [he] could smell the alcohol from him." Vallen alleges the interaction occurred in view of other staff and nurses. (Compl. III at 4, ¶ IV.) Again, Plaintiff seeks "effective treatment for [his] continuing trauma." (Compl. III at 4, ¶ IV.A.) He wants "a caring environment" and to "not be treated like a secondhand patient." In Complaint III, Plaintiff requests $75 million in damages. (Compl. III at 5.)

## DISCUSSION

Defendants move to dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that none state a cause of action. They further contend that Plaintiff's claims are barred by sovereign and qualified immunity. Finally, they request an order prohibiting Plaintiff from filing any future lawsuits without first seeking permission from this Court. (See Defs.' Mot.)

Vallen's opposition (Pl.'s Opp., 16-CV-2893, D.E. 24)[2] does not respond to Defendants' arguments, but rather makes new claims regarding Hall's unauthorized searches of his belongings. "[W]hile district courts are not required to consider claims that are raised for the first time in a pro se plaintiff's opposition to a motion to dismiss, the [C]ourt may consider factual allegations contained in a plaintiff's submissions in opposition to a defendant's motion to dismiss, to the extent that they are consistent with the complaint." Macklin v. Am. Bldg. Maint., No. 15-CV-3675, 2016 WL 423657, at *1 (S.D.N.Y. Jan. 7, 2016), R&R adopted, 2016 WL 439067 (S.D.N.Y. Feb. 3, 2016). Here, Plaintiff's opposition does not reference the claims in his Complaints at all. The Court declines to review the entirely new claims. See Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008) (affirming that a new constitutional challenge raised in opposition briefing was properly dismissed because the complaint did not "encompass that claim"); Mira v. Argus Media, No. 14-CV-0675, 2017 WL 1184302, at *3 (S.D.N.Y. 2017) (declining to review claims raised in a pro se plaintiff's opposition briefing because the allegations went "well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories.").

---

[2] Although Vallen's submission does not bear the title of "Opposition," the Court construes it as such as it is the only document filed in response to Defendants' motion.

I.   Motion to Dismiss Standard

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Although the Court must accept all allegations in the complaints as true, this tenet is "inapplicable to legal conclusions." Id.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).  Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citation omitted).

6

See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citations omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

II. The May Incident

Plaintiff brings his claim pursuant to 42 U.S.C. § 1983. "'In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person acting under color of state law deprived him of a federal right.'" Ahlers v. Rabinowitz, 684 F.3d 53, 60-61 (2d Cir. 2012) (quoting Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986)). "To determine the substantive rights of a person involuntarily committed to a state institution, the interests of the individual are balanced against the interests of the state." Id. at 61 (citing Youngberg v. Romeo, 457 U.S. 307, 320, 102 S. Ct. 2452, 2460, 73 L. Ed. 2d 28 (1982)). "[T]he state's interest in maintaining order and security is not punitive in purpose or character, and remains valid in institutions of civil commitment." Id. (noting the "'societal interest in protecting the health, safety, and welfare of the patients and staff'" in a

7

state psychiatric center described in Aiken v. Nixon, 236 F. Supp. 2d 211, 232 (N.D.N.Y. 2002)). The Court construes Plaintiff's allegations against Sydziac and Newson as excessive force and verbal harassment, respectively.

"Individuals involuntarily committed to state custody, such as Plaintiff, have constitutionally-protected liberty interests in adequate food, shelter, clothing, medical care, and conditions of reasonable care and safety." Vallen v. Plan, 15-CV-0703, 2016 WL 482026, at *3 (E.D.N.Y. Feb. 4, 2016) (citing Youngberg, 457 U.S. at 324, 102 S. Ct. at 2458-59). "'The rights of patients who are involuntarily committed have been likened to the rights of detainees awaiting trial.'" Id. (quoting James v. Morgan, 13-CV-0526, 2014 WL 841344, *2 (N.D.N.Y. Mar. 4, 2014); (quoting Buthy v. Comm'r of Off. of Mental Health of N.Y., 818 F.2d 1046, 1051 (2d Cir. 1987) ("'applying the levels of protection afforded pre-trial detainees under the Due Process Clause to persons confined due to an acquittal by reason of insanity or their incompetence to stand trial'") (further citations omitted)). Contrary to Defendants' assertions, because Plaintiff was involuntarily committed at the time of the challenged conduct, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. Id.

"In reviewing [Section 1983] claims [of involuntarily committed plaintiffs against 'professionals'], the critical

8

question is whether the charged official's decision alleged to have caused a deprivation was 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Dove v. City of N.Y., No. 03-CV-5052, 2007 WL 805786, at *7 (E.D.N.Y. Mar. 15, 2007) (quoting Youngberg, 457 U.S. at 323, 102 S. Ct. at 2462). However, "some courts have declined to apply the Youngberg standard to officials deemed to be 'low-level staff members,' and, instead, apply a 'deliberate indifference' standard to Section 1983 claims against such officials, asking whether the challenged officials displayed a mental state of deliberate indifference with respect to [plaintiff's] rights." Id. (collecting cases). According to Vallen's complaints, Sydziac and Newson are staff members of Pilgrim. At this juncture, giving Plaintiff every favorable inference, the Court considers Sydziac to be a professional, as Defendants assert he is a nurse. See Youngberg, 457 U.S. at 323 n.30 (a professional is "a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded."). However, it is less clear whether Newson, described by Defendants as a "mental therapy aide," can be

9

considered a professional for purposes of applying either the "substantial departure" or "deliberate indifference" standard. The Court addresses this issue below in its discussion of the allegations against Newson.

A. Sydziac

Recognizing Sydziac as a professional, this Court cannot say that merely pushing Plaintiff back into his wheelchair, without more, was a substantial departure from professional judgment. Courts must "show deference to the judgment exercised by a qualified professional" and "a decision, if made by a professional, is presumptively valid." Youngberg, 457 U.S. at 322-23, 102 S. Ct. at 1461-62. The United States Supreme Court recently held that a pretrial detainee must demonstrate that a defendant's use of force is objectively unreasonable to prove an excessive force claim. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015); see also Maxwell v. Miller, No. 16-CV-0275, 2018 WL 3095834, at *5 (N.D.N.Y. May 21, 2018), R&R adopted, No. 16-CV-0275, 2018 WL 3069210 (N.D.N.Y. June 21, 2018) ("Because it is well settled that a civil detainee's constitutional conditions-of-confinement claims arise under the Fourteenth Amendment due process clause, Youngberg, 457 U.S. at 315-16, and because the rationale by the Supreme Court in Kingsley seems equally applicable to civil detainees, I find that the legal standard articulated in Kingsley applies in this action to plaintiff's excessive force

claim."). Courts have held that isolated, de minimus uses of force against involuntarily committed plaintiffs do not constitute excessive force and are thus not constitutional deprivations. Radin v. Tun, No. 12-CV-1393, 2015 WL 4645255, at **9 n.18, 10 (E.D.N.Y. Aug. 4, 2015) (citing Lopez v. City of N.Y., No. 05-CV-10321, 2009 WL 229956, at *8 (S.D.N.Y. Jan. 30, 2009) (collecting cases finding that a slap "does not rise to the level of a constitutional violation" in the prison context)).

Plaintiff has filed two complaints regarding Sydziac's actions, and at most, they amount to pushing Plaintiff back into a wheelchair. He alleges no injury whatsoever. See Radin, 2015 WL 464525, at *10 (applying Kingsley, Plaintiff's vague assertions that she suffered "a beating" were insufficient under Section 1983 and dismissing her excessive force claims with prejudice upon defendants' motion to dismiss). The use of force was not objectively unreasonable. The Court does not find that repleading would cure these defects. Thus, the claims against Sydziac are DISMISSED WITH PREJUDICE.

B. Newson

Although an involuntarily committed individual's rights are compared to those of a pretrial detainee, courts have analyzed Section 1983 claims with reference to the Eighth Amendment. See, e.g. Coffeey v. Hollenbeck, No. 14-CV-196, 2016 WL 770087, at *6 (N.D.N.Y. Jan. 27, 2016), R&R adopted, 2016 WL 796081 (N.D.N.Y.

11

Feb. 22, 2016) (with respect to involuntarily committed plaintiffs' Section 1983 challenges to issues arising from their confinement, "cases analyzed under the Eighth Amendment provide guidance in analyzing cases considered under the Fourteenth Amendment"); Groves v. Davis, No. 11-CV-1317, 2012 WL 651919, at *3 (N.D.N.Y. Feb. 28, 2012) ("As have numerous other courts which have considered the issue, this Court has found that the standard for analyzing a civil detainee's Fourteenth Amendment conditions of confinement claim is the same as the Eighth Amendment standard") (internal quotation marks omitted) (collecting cases).

In the context of prisoners, "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (internal quotation marks omitted) (collecting cases). Furthermore, in the context of involuntarily committed individuals, "[a]llegations of verbal harassment are insufficient to support a Section 1983 claim." Groves, 2012 WL 651919 at *5 (dismissing, with prejudice, the deliberate indifference claims of plaintiff, a patient at the Central New York Psychiatric Center). A single verbal threat directed at an involuntarily committed individual, even a serious one, does not rise to the level of a

12

constitutional deprivation. See Coffeey, 2016 WL 770087 at *11 ("Coffeey claims that Hollenbeck threatened to 'take [Coffeey] out in a body bag.' To the extent Coffeey attempted to allege a potential Fourteenth Amendment claim against Hollenbeck for making verbal threats, such a claim must fail. A claim of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim.") (alteration in original). The Court finds that Newson's comments, "while callous and distasteful, do not rise to the level of a constitutional violation." Vallen v. Carrol, No. 02-CV-5666, 2005 WL 2296620, at *7 (S.D.N.Y. Sept. 20, 2005). The Court would find so whether the claims against Newson were analyzed under a "substantial departure" or "deliberate indifference" standard. As Plaintiff has already given two factual accounts of this incident demonstrating that it was a short encounter with no physical component, his claims against Newson are DISMISSED WITH PREJUDICE.[3]

III. The Mail

Plaintiff also brings his mail complaint pursuant to Section 1983. Although he does not specifically allege the constitutional deprivation caused by the purportedly inefficient mail system at Pilgrim, in giving the complaint its most liberal

---

[3] As the Court is dismissing the claims against Sydziac and Newson with prejudice, it need not consider their immunity arguments.

13

construction, the Court finds that Plaintiff alleges a constitutional restriction of his legal mail.

"In the context of civil commitment . . . [a] patient must show regular and unjustifiable interference with incoming legal mail; the actions of facility staff in restricting civilly committed individuals' access to legal mail are justified if they advance or protect the state's interest in security, order, or treatment and the restrictions imposed are no greater than necessary to advance the governmental interest involved." Ahlers, 684 F.3d at 64.

Vallen's complaint generally alleges that Pilgrim's mail system is inefficient, that mail sits before being delivered, and that incoming mail is erratic. Though he does not specifically allege that he is being deprived of legal mail, he asserts that he "lost a big case in court due to not receiving certified mail." (Compl. II at 4, ¶ IV.A.) These allegations, devoid of details such as dates, times, types of mail, and frequency of occurrence, are insufficient to state a claim for a constitutional deprivation. See Ahlers, 684 F.3d at 65 ("eleven instances over four months does not in itself support an inference of regular interference. And the allegation that mail was withheld is insufficient to support a claim that it was withheld unjustifiably."); Cancel v. Goord, No. 00-CV-2042, 2002 WL 171698, at *3 (S.D.N.Y. Feb. 4, 2002) (an allegation of seven delays, ranging from two to six

14

weeks, over the course of a year, was insufficient). Furthermore, Vallen fails to connect Hall to the issues he alleges with his mail. Accodingly, Plaintiff's claims against Hall are DISMISSED WITHOUT PREJUDICE. If Plaintiff wishes to file an Amended Complaint to remedy these defects, he may do so in accordance with this Order.

A. <u>Eleventh Amendment Immunity</u>

Suits against state officials in their official capacities are permitted for prospective injunctive relief to stop ongoing violations of federal law. <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, 707 F.3d 144, 166 (2d Cir. 2013). Plaintiff does not seek monetary damages from Hall. He seeks injunctive relief, namely, "a more efficient mail system." (Compl. 3 at 5.) Thus, the Eleventh Amendment does not bar his claims.

B. <u>Qualified Immunity</u>

The allegations in Plaintiff's Complaint II are insufficient to state a claim under Section 1983. As stated above, Plaintiff must allege with more specificity what issues he is having with his mail and describe Hall's personal involvement. The Court need not consider Hall's potential immunity at this stage, and further, on this record, the Court cannot state that Hall is entitled to qualified immunity as a matter of law. The Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for

15

summary judgment must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004); see also James v. Suffolk Cty. Corr. Facility, No. 13-CV-2344, 2014 WL 4659300, at *5 (E.D.N.Y. Sept. 17, 2014) (noting that evidence supporting qualified immunity is normally adduced during the discovery process and at trial). Plaintiff is granted LEAVE TO REPLEAD the allegations in the Complaint against Hall under Docket No. 16-CV-2632 and file an Amended Complaint under lead Docket No. 16-CV-2893.

IV. Defendants' Request for an Order Concerning Future Lawsuits

Vallen has been a persistent litigant in this Court and others. Defendants have documented at least twenty-seven cases from federal and state courts from their files. A review of Vallen's prior cases before the federal courts, all of which challenge his confinement in some way, indicates that he has been largely unsuccessful: (1) Vallen v. Connelly, et al., 99-CV-9947 (District Court granted summary judgment to defendants and Second Circuit affirmed, Vallen represented by counsel); (2) Vallen v. The State of N.Y., et al., 08-CV-7467 (complaint dismissed pursuant to 28 U.S.C. 1915(e)(2) and Second Circuit dismissed appeal because it lacked an arguable basis in law or fact); (3) Vallen v. The State of N.Y., 08-CV-7564 (complaint dismissed pursuant to 28 U.S.C. 1915(e)(2) and Second Circuit dismissed appeal because it lacked an arguable basis in law or fact); (4) Vallen v. Mid-Hudson

16

Forensic, et al., 02-CV-5666 (defendant's motion for summary judgment granted); (5) Vallen v. Miraglia, et al., 10-CV-4225 (complaint dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) after Plaintiff given leave to amend); (6) Vallen v. Beau Plan et al., 15-CV-0703 (motion to dismiss granted due to Plaintiff's failure to state a claim). The repetitive and duplicative nature of Plaintiff's actions--and his lack of success--demonstrates that Plaintiff may be "abus[ing] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive appeals and other proceedings." In re Hartford Textile Corp., 659 F.2d 299, 305 (2d Cir. 1981); see also Malley v. N.Y. City Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (per curiam) (filing injunction may issue if numerous complaints filed are based on the same events). Without an indication of Plaintiff's success in state court, however, and in an abundance of caution given his pro se status, the Court declines to issue a filing injunction at this time.

Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir. 1999). Those circumstances include cases

17

where a litigant engages in the filing of repetitive and frivolous suits. See Malley v. N.Y. City Bd. of Educ., 112 F. 3d 69 (2d Cir. 1997) (per curiam) (filing injunction may issue if numerous complaints filed are based on the same events). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiffs with notice and an opportunity to be heard before imposing a filing injunction. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). The Court is especially cognizant of Plaintiff's pro se status and has considered his Complaints as liberally as possible. Nonetheless, the Court now warns Plaintiff that similar future complaints will not be tolerated. Given Plaintiff's lengthy litigation history in this Court, and others, the Court now cautions Plaintiff that, should he file another Complaint relating to these issues (aside from the Amended

Complaint authorized by this Order), the Court will order Plaintiff to show cause why a litigation bar should not be entered.

V. Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to replead should be liberally granted to pro se litigants. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)).

The Court reiterates that leave to replead as to Sydziac and Newson would be futile. Accordingly, Plaintiff is GRANTED LEAVE TO AMEND only Complaint II against Hall under Docket No. 16-CV-2632 in accordance with this Memorandum and Order. Any Amended Complaint shall be filed within thirty (30) days from the date of this Order, shall be titled "Amended Complaint," and shall bear Docket No. 16-CV-2632. Plaintiff is cautioned that his failure to timely file an Amended Complaint will lead to the dismissal of his complaint against Hall WITH PREJUDICE and the case will be closed.

CONCLUSION

For the above reasons, Defendants' motion (see 16-CV-2893, D.E. 20, and 16-CV-2632, D.E. 23) is GRANTED. All claims against Defendants Sydziac and Newson are DISMISSED WITH PREJUDICE and the Clerk of the Court is directed to TERMINATE them as

19

Defendants and mark Docket No. 16-CV-2893 CLOSED.  As to Defendant Hall, the claims against her are DISMISSED WITHOUT PREJUDICE, and Plaintiff is given LEAVE TO REPLEAD in accordance with this Order. Plaintiff's failure to file an Amended Complaint under Docket No. 16-CV-2632 within thirty (30) days of the date of this Order will result in dismissal of the case with prejudice.

Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March   22  , 2019
          Central Islip, New York